FILED
APR 19 2010
U.S. COURT OF FEDERAL CLAIMS

## In The United States Court of Federal Claims

| | |
|---|---|
| **Paul Raffaele**<br><br>Plaintiff,<br><br>vs.<br><br>**The United States, The Smithsonian Institution, and Smithsonian Magazine**<br><br>Defendants | Case No. **10-248 C** |

## Complaint for Breach of Contract

Mr. Paul Raffaele, Plaintiff, by his attorney, Michael J. Trevelline, sues the United States of America, the Smithsonian Institution, and Smithsonian Magazine, Defendants, and states:

### PARTIES

1. This Court has jurisdiction over these parties and these matters pursuant to 28 U.S.C. § 1491(a)(1).

2. Plaintiff, Paul Raffaele, is a distinguished writer, journalist and for more than three years was a major contributor to the Smithsonian Magazine. Raffaele's work for the Smithsonian Magazine is featured on the magazine's website in a special section titled, "Touring the Globe with Journalist Paul Raffaele." In November 2008, Smithsonian Magazine nominated Raffaelle's story *The Pygmies' Plight* as its 2008 National Magazine Award entry in the reporting category.

3. While on assignment for Smithsonian in Afghanistan in April 2008, Raffaele was gravely injured by a suicide bomber while reporting a story about the Afghani's efforts to destroy poppy fields. The bomb shot pieces of metal into Raffaele's elbow, chest and brain, where they remain today. The attack killed twenty-two

1

policemen and wounded an additional thirty-two. Raffaele has been debilitated by permanent injuries and cognitive deficits as a result of the attack. The Smithsonian Magazine failed to procure insurance for Raffaele as promised by the magazine's Editor-In-Chief, Carey Winfrey and now Raffaele is left with staggering medical bills and permanent and debilitating injuries.

4. Defendant, United States, is and was during the time periods relevant to the claims presented and relevant to the Complaint acting through the Smithsonian Magazine and the Smithsonian Institute.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a)(1); and 28 U.S.C. § 1346(b) Federal Tort Claims Act.

## FACTS AND ALLEGATIONS

6. Raffaele traveled to Afghanistan in April 2008 on assignment for the Smithsonian Magazine. On April 29th, Raffaele joined an Afghan police convoy and set out from Jalalabad for a poppy field several hours away. About forty minutes into the ride, the convoy pulled up to the gate of a police base in a small town named Khogyani in a district by the same name. While the Afghans talked with some policemen from the base, Raffaele sat in a car. The suicide bomber, a twelve year old boy, approached the convoy and detonated his charge.

7. Raffaele remembers a bright light, a loud sound and searing pain. His vision dimmed. He felt a dripping at the back on his neck, and when he moved his hand to the back of his head he felt "mush" where the shrapnel smashed into his head. He then lost consciousness.

8. The shrapnel that penetrated Raffaele's skull and became lodged inside his brain could not be removed without damaging the brain. More shrapnel from the bomb penetrated Raffaele's arm and chest, where it broke one of his ribs and grazed Plaintiff's heart.

9. Before the Afghanistan assignment, Raffaele met with Carey Winfrey, editor-in-chief for the Smithsonian Magazine, to request comprehensive insurance for future dangerous assignments due to a life-threatening incident that occurred on a previous assignment for Smithsonian Magazine. Carey consented.

10. On a second occasion, while reporting in Kenya, Raffaele had a close encounter with a charging elephant. Upon his return, Raffaele had a conversation Winfrey, and again brought up injury insurance.

11. Winfrey again consented and assured Raffaele that the Smithsonian Magazine would obtain insurance coverage for Raffaele in the event Raffaele was injured on assignment.

12. The damage done to Plaintiff's brain, particularly the right occipital lobe - which acts as the center for vision and spatial perception - remains significant and permanent.

13. As a result of the injuries, Raffaele has suffered a significant loss of peripheral vision which extends almost to the center or straight-ahead point, which causes Raffaele to be unable to see oncoming objects, such as cars, as they approach from his periphery.

14. A computer map field eye scan ("ENT") determined that about fifty percent of Raffaele's field of vision had been destroyed.

15. Raffaele experiences significant problems with reading and writing: words become jumbled or "melt together," small words disappear, and typing has become significantly more difficult as Raffaele has a great deal of trouble placing his finger on the correct keyboard key.

16. Raffaele also experiences balance problems, causing him to trip and fall on numerous occasions; Raffaele is forced to use a cane and rarely leaves the house out of fear of further injury.

17. Raffaele has additionally suffered damage to his ears and hearing; he has been diagnosed with bilateral high tone sensorineural hearing loss and has been recommended hearing aids for both ears.

18. In addition to a constant noise in his ears, Raffaele suffers from a distortion of the sounds of human voices and music, as well as amplification of ambient noises, such as doors closing and taps dripping, creating an unrelenting distraction that inhibits Raffaele's ability to sleep and concentrate.

19. Raffaele was prescribed the drug Dilantin, which was necessary to prevent epileptic seizures as his brain attempted to heal. Raffaele suffered significant side effects from the Dilantin such as drowsiness which caused Raffaele to sleep much of the day. He also became dizzy and exhausted from simple acts such as reading or talking. Raffaele was on Dilantin for seven months after the injury.

20. Because of the presence of the injury to his brain and the presence of the schrapnel, Raffaele faces the possibility of becoming epileptic which will force him to remain on the Dilantin drug permanently.

21. Raffaele and Raffaele's family face the possibility of enormous future expenses for, among other things, care and medical treatment arising from the shrapnel, slips and falls, hearing aids, and treatment for the aforementioned potential epilepsy.

22. Upon information and belief, the Smithsonian Magazine relies entirely on freelance contributions and employs no full time staff writers.

23. In the media industry, outlets do not draw a distinction between freelancers and full time employees in deciding who is properly trained, equipped and insured for dangerous assignments.

24. Freelance story rates are inadequate to allow journalists to provide their own safety, protection, and insurance.

## FIRST CAUSE OF ACTION
(Breach of Contract – Failure to Procure Insurance)

25. Raffaele repeats and realleges paragraphs 1-23 above as if set forth fully herein.

26. Carey Winfrey, acting on behalf of Defendant and Smithsonian Magazine, entered into an oral agreement with Raffaele to provide Raffaele with insurance coverage for personal injuries for Raffaele's dangerous assignments.

27. Carey Winfrey was authorized to enter into such an agreement with Raffeale.

28. Neither the Smithsonian Magazine nor any of its agents subsequently procured said insurance for Raffaele.

29. Raffaele accepted additional dangerous assignments from Smithsonian Magazine in reliance of the belief that Smithsonian Magazine had in fact procured said insurance for Raffaele.

30. Raffaele was severely injured on his assignment to Afghanistan.

31. As a result of Defendant's conduct or lack thereof Raffaele: was rendered uninsured and has incurred and faces in the future enormous medical expenses; has endured pain and suffering; has suffered a diminishment in his enjoyment and quality of life; has a diminished ability to work and maintain employment.

32. Raffaele performed all of his duties and obligations under his agreement with the Smithsonian Magazine.

33. Accordingly, Defendant has breached its agreement with Raffaele.

**WHEREFORE,** Raffaele hereby demands judgment against Defendant as follows:

1. In amount to be determined at trial but not less than $1,000,000.00;

2. Interest on the principal sum from April 2008;

3. Court costs and expenses; and

4. For such other and further relief as the Court may deem just and proper.

Dated: 19 April 2010     Signed: _____
                         Michael J. Trevelline, DC Bar # 437454
         Address:        1823 Jefferson Place, NW
                         Washington, DC 20036-2504
         Telephone:      (202) 737-1139/Fax: (202) 775-1118
         Email:          mjt@mjtlegal.com

                         Attorney for **Plaintiff Paul Raffaele**